The **PEOPLE** of the State of Colorado, Complainant,

v.

Richard W. **JOHNSTON**, Jr., Attorney–Respondent.

No. 87SA442.

Supreme Court of Colorado, En Banc.

June 6, 1988.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Leonard W.D. Campbell, Montrose, for attorney-respondent.

---

ERICKSON, Justice.

This disciplinary proceeding culminated in a stipulation which has been approved by the Grievance Committee of this court, the respondent, and his counsel. The stipulation approves suspension for one year and one day, and requires the payment of the costs incurred in this proceeding in the amount of $738.05. We approve the stipulation and suspend the respondent, Richard W. Johnston, Jr., for one year and one day, and order that he pay the costs of the disciplinary proceedings to the Grievance Committee within thirty days. The respondent has also agreed, and we now order, that he pay the Watsons $685.25 for attorney's fees that were incurred for work that the respondent had agreed to do.

### I.

Richard W. Johnston, Jr. was admitted to the bar of this court on October 4, 1966, and is subject to the jurisdiction of this court and its Grievance Committee. A series of disciplinary complaints before the Grievance Committee were resolved by the stipulation which includes letters from two psychiatrists who concluded that the respondent has been in a state of serious mental depression since the summer of 1984, when he underwent a very bitter divorce after a long marriage. The depression which he was suffering, in the opinion of the psychiatrists, caused him to fail to both communicate with his clients and to return a number of their calls. His mental state and his present mental condition were analyzed by Paula Trautner, a psychiatrist, and Richard E. Troy, a psychiatrist, who examined the respondent at the request of the disciplinary prosecutor, the reports of both psychiatrists provide an explanation but not an excuse for the neglect and delay that the respondent imposed on his clients. But for the respondent's mental illness, we would impose a more severe sanction than that imposed in this case.

### II.

Respondent brought suit for the Watson family against the Waughs to resolve contract claims relating to the sale of real property and to resolve a trespass claim. On the day set for trial, a stipulation was reached, settling all of the claims. The Watsons agreed to pay $50,000 to the Waughs for the purchase of the real property and the Waughs were to provide title insurance and a properly executed deed that conveyed all water appurtenant to the property. The stipulation was silent as to $2,700 which had been paid by the Watsons on a monthly basis as purchase or lease monies, depending upon how the real estate claims were resolved. After the stipulation was signed, the Watsons asked the respondent about the $2,700, which had been paid into the registry of the court. Respondent admitted that he had forgotten the $2,700 in the course of the negotiations and that he would contact counsel for the Waughs to see if he could obtain the return of the money. When the respondent contacted Waughs' counsel, he was advised that $2,700 was part of the consideration for the settlement. He did not contest the Waughs' position, but he failed to communicate that fact to the Watsons and never completed the work necessary for the issuance of the title policy and the warranty deed. The respondent should have filed an order of dismissal in the civil action, and obtained a release of a federal tax lien for back taxes owed by Lloyd Watson to obtain a title policy. However, the respondent, after receiving documents establishing that the back taxes had been paid, did nothing. Eventually, the Watsons obtained other counsel and the title was cleared and the transaction closed. The respondent did not cooperate in any way with his clients' new counsel but has now agreed to pay the attorney's fees incurred by the Watsons in completing the transaction.

The respondent admits that he neglected legal matters entrusted to him and that he failed to communicate with his clients and their new counsel in violation of C.R.C.P. 241.6 [1] and DR6–101(A)(3) (neglect of a le-

---

1. C.R.C.P. 241.6 provides:

Misconduct by a lawyer, individually or in concert with others, including the following

gal matter entrusted to a lawyer).[2]

The respondent was notified of the complaints relating to his representation of the Watsons. He also was informed that his answer to the disciplinary complaint was overdue and that failure to respond to the disciplinary complaint could result in discipline. On January 9, 1986, the Grievance Committee investigator spoke to the respondent and was advised that a response would be filed no later than January 15, 1986. On March 5, 1986, when no response was filed, the investigator called to advise the respondent that a default would be taken if he did not respond. The respondent was not available so the investigator left a message with the respondent's secretary and confirmed that conversation by letter the next day. The respondent, however, failed to respond to the request for investigation or to file an answer. The respondent's failure to respond to the request for investigation violates C.R.C.P. 241.6(7).

### III.

The respondent agreed to file a replevin action for Rudy Gallegos to recover a Datsun station wagon that Gallegos had purchased from Ron Herrera. The respondent failed to file the action and Gallegos filed a complaint against the respondent. Ron Herrera was arrested for the sale of a controlled substance and the prosecution sought to confiscate the Datsun because it was used to transport illegal substances and was a public nuisance. The Datsun, however, had been sold to Gallegos in April 1985, long before it was used to transport drugs.

Respondent did not file the replevin action until October 1985 and the car was returned to Gallegos after a hearing on October 11, 1985. The hearing resulted in the release of the Datsun and the dismissal of a claim made by the respondent for the loss of the use of the Datsun because the respondent failed to file the necessary notice of claim. § 24–10–109, 10 C.R.S. (1982). Respondent admits that his delay in filing the replevin action and his failure to file a notice of claim violated C.R.C.P. 241.6 and also violated the Code of Professional Responsibility, DR 6–101(A)(3). The committee concluded that Gallegos' complaint against the respondent for malpractice would be best left to a civil action and should not be resolved in this proceeding.

### IV.

The respondent also represented Ron Herrera on charges relating to the sale of cocaine and marijuana. Herrera pled guilty to sale of cocaine, a class three felo-

---

acts or omissions, shall constitute grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship:

(1) Any act or omission which violates the provisions of the Code of Professional Responsibility;

(2) Any act or omission which violates accepted rules or standards of legal ethics;

(3) Any act or omission which violates the highest standards of honesty, justice, or morality;

(4) Any act or omission which constitutes gross negligence, if committed by a lawyer in his capacity as a lawyer;

(5) Any act or omission which violates the criminal laws of this state or any other state, or of the United States; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action;

(6) Any act or omission which violates these Rules or which violates an order of discipline or disability;

(7) Failure to respond to a request by the Committee without good cause shown or obstruction of the Committee or any part thereof in the performance of its duties. Good cause includes, but is not limited to, an assertion that a response would violate the respondent's constitutional privilege against self-incrimination.

This enumeration of acts and omissions constituting grounds for discipline is not exclusive, and other acts or omissions amounting to unprofessional conduct may constitute grounds for discipline.

2. In regard to the Watson claims, the committee concluded that the Watsons did not suffer any damage, but actually benefited substantially by the stipulation entered into by the respondent on their behalf. The Watsons did incur attorney's fees in the amount of $685.25 which the respondent has agreed to pay immediately upon the entry of an order in this case.

**13**

ny, and sale of marijuana, a class four felony, and was sentenced to nine years in the Department of Corrections. The respondent filed a motion for reduction of sentence which was denied. A motion for reconsideration was also denied. The respondent appealed to the Colorado Court of Appeals, but the appeal was dismissed for failure to file the record on appeal after a number of extensions were granted. Eventually, a public defender obtained a reduction of the sentence to nine years in the community corrections program in a Crim. P. 35(b) proceeding.

The conduct of the respondent in this case furthers the record of neglect and delay that his representation in the prior cases established. He neglected legal matters entrusted to him in violation of C.R. C.P. 241.6 and violated the Code of Professional Responsibility, DR 6–101(A)(3).

## V.

Celia Smith retained the respondent to represent her in a dissolution of marriage action in March 1985. Temporary orders were entered after a hearing on July 30, 1985, and permanent orders were scheduled for a hearing on November 1, 1985. Settlement negotiations resulted in the vacation of the permanent orders hearing with an agreement that counsel would notify the court whether a settlement had been reached or whether the final orders hearing should be rescheduled. A proposal was sent to Mrs. Smith in December 1985, but she was dissatisfied with the terms. Mr. Smith's attorney scheduled a final orders hearing for February 25, 1986, because he could not obtain an answer from the respondent relating to the settlement proposal. When Mrs. Smith next heard from the respondent, it was in February 1986 and he urged her to accept a new proposal that he said would finalize the settlement within six weeks. Mrs. Smith agreed to the settlement and a new hearing date was vacated. Thereafter, the respondent failed to respond to any correspondence or calls from opposing counsel, and did not communicate with his client.

On October 14, 1986, respondent appeared at a scheduled court hearing on final orders and agreed to a settlement proposal made by opposing counsel that was different from that which his client had agreed to. The respondent, however, told the court that his client had approved the proposal. He also told the court that his client was responsible for the delay, and stated that she had failed to return the settlement agreement to him. The referee entered final orders based upon purported settlement agreement at the hearing. In fact, Mrs. Smith had never approved the settlement agreement and the respondent made serious misrepresentations to the court.

An additional complaint was made because in May 1985 the respondent was retained by Mrs. Smith to represent her son in a claim against State Farm Insurance Company for injuries suffered in an automobile accident. According to Mrs. Smith, almost all the terms of a settlement were agreed to by June 1985, but the respondent abandoned the case and the matter was not settled by respondent's associate until January 1987, over eighteen months after the respondent was retained.

The respondent's actions in representing the Smiths again violated C.R.C.P. 241.6 and violated the Code of Professional Responsibility, DR 1–102(A)(4), and DR 6–101(A)(3).

## VI.

The respondent admitted that his conduct was marked by neglect and delay and that he failed to cooperate with the Grievance Committee in the investigation of the complaints made by his clients. The Grievance Committee found that respondent's conduct was due in large part to the mental disorder described in the psychiatric reports. Based upon American Bar Association Standards for Imposing Lawyer Sanctions, section 4.42, the Grievance Committee has recommended suspension for one year and one day, and that respondent be required to undergo an evaluation by a mental health professional at his own expense as a part of any reinstatement proceeding. The re-

spondent has agreed in the stipulation to pay the costs incurred in these proceedings within thirty days and to pay the attorney's fees incurred by the Watsons.

Although the respondent's mental condition was diagnosed by Dr. Paul Trautner as "major depression, single episode, without psychotic symptoms" and provides some evidence of mitigation, the complaints reflect a pattern of neglect, delay, and misconduct that cannot be condoned. The respondent has previously received a letter of admonition for basically the same types of neglect and delay that resulted in the disciplinary complaints in this case. Were it not for his mental illness, suspension for one year and one day would be far too lenient a sanction. However, under the facts of this case, we have decided to accept and approve the stipulation. Accordingly, the respondent is suspended for one year and one day. In applying for reinstatement, the respondent must pay the Grievance Committee $685.25 attorney's fees for work by June 16, 1988, and must reimburse the Watsons for work incurred after the respondent failed to honor the terms of his employment. He shall also pay to the Grievance Committee, 600–17th Street South, Denver, Colorado 80202–5435, costs in the amount of $738.05 within thirty days from June 6, 1988.